# Baldwin et al. v. Cook et al.

(Decided January 17, 1930.)

DAVID R. CASTLEMAN and ARTHUR B. BENSINGER for appellant.

WM. W. CRAWFORD, SAMUEL S. BILTZ and WILLIAM FURLONG for appellee.

OPINION OF THE COURT BY DRURY, COMMISSIONER—Affirming.

Appellants sought by virtue of section 2133, Ky. Stats., to have adjudged forfeited the devise made by C. Lee Cook to his wife, Gulielma Stiles Cook, because she had, so they said, left him and clandestinely lived in adultery for more than a year immediately preceding his death, of which acts he had no knowledge, and that he never thereafter became reconciled to her or lived with her as her husband with knowledge thereof. They were unsuccessful, and seek from this court the relief denied them by the trial court.

There is but one question presented, and that is: Does section 2133, Ky. Stats., apply to a legacy or devise to a wife, made by her husband in his will? The answer is, "No." Having stated our conclusion, we shall now set forth the reasons that have led us to it.

This controversy was heard and determined in the trial court upon motion to strike from and demurrer to the pleadings of the appellants. As it was thus disposed of, it may in justice to her be said the widow has had no

opportunity to deny the charge against her, or to offer pleading or proof of her innocence, nor have the appellants had opportunity to offer proof of her alleged guilt. The case is thus before us on the pleadings of the appellants, which pleadings we must take and treat as being true, and as stating the facts in all their ugliness, just as strongly as they could be stated.

A brief review of the legislation leading up to the statute in question may be of assistance. It begins with the subject of dower. At common law adultery was no bar of dower. The first statute we find on the subject is the English statute of 13 Edward I, c. 34, enacted in 1285, and commonly called the "Statute of Westminster Second." This statute is copied in McQuinn v. McQuinn, 110 Ky. 321, 61 S. W. 358, 22 Ky. Law Rep. 1770. The provision of this statute is comprehended shortly, as Lord Coke tells us, in two hexameters:

"Sponte virum mulier fugiens et adultera facta,
Dote sua careat, nisi sponsi sponte retracta."

This statute found its way to America along with the English settlers, and became a part of the colonial law and of the post-Revolutionary legislation. See Henning's Laws of Virginia, p. 180. Soon it was enacted in our state. See section 5 of an act approved December 19, 1796, chapter 272, p. 518, of Littel's Laws of Kentucky. It continued on our statute books until 1893.

In the meantime kindred legislation had appeared, just when we have not taken the pains to discover, but in the Act to Revise the Statutes, approved March 24, 1851, there is found under the title of descent and distribution, as sections 15 and 16 of chapter 25 of that act (see pages 341 and 342 of Acts of 1850-51), two provisions which are the same as (g) and (h) infra, sections 13 and 14 of chapter 251 of Acts of 1891-92-93, and also the same as sections 1405 and 1406 of our present Ky. Stats.

Thus in the early part of the year 1894 there was upon our statute books the following statutes, parts of which we have italicized for our own convenience:

Under the heading of Husband and Wife there was:

(a) "Sec. 40. Where there is issue of the marriage born alive, the husband shall have an estate

for his own life, in all the real estate owned by and possessed by the wife at the time of her death, or of which another may be then seized to her use. Such estate shall, however, be subject to the debts of the wife, whether contracted before or after marriage."

(b) "Sec. 41. After the death of the husband, the wife shall be endowed for her life of one-third of the real estate of which he, or any one for his use, was seized of an estate in fee-simple at any time during the coverture, unless her right to such dower shall have been barred, forfeited or relinquished."

(c) "Sec. 42. If the wife voluntarily leave her husband and live in adultery, or if the husband voluntarily leave his wife and live in adultery, the party so offending shall forfeit *his right of curtesy or dower, as the case may be,* unless they afterwards become reconciled and live together as husband and wife."

See Acts 1891-92-93, pp. 936, 937, c. 205.

Under the heading of Descent and Distribution, there was:

(d) "Sec. 11. . . . Third. A husband shall have the whole surplus of a deceased wife's personal estate."

(e) "Fourth. If the intestate leaves issue, his widow shall have one-third, and if no issue, one-half of such surplus."

(f) "Fifth. (Here follows the old statute about the yoke of oxen, the family Bible, the spinning wheel, ax, hoe, etc., which is too long to copy.)"

(g) "Sec. 13. Where the wife voluntarily leaves her husband and lives in adultery, she shall have no part of the personal estate of which he dies intestate, unless her husband, after she so left him, became reconciled to her and suffered her to live with him."

(h) "Sec. 14. Where the husband separates from the wife and lives apart from her in adultery, and she dies without a reconciliation and cohabitation, he shall have no part of her personal estate as a distributee."

See Acts 1891-92-93, pp. 1380, 1382, c. 251.

By an act (entitled "An Act to amend and re-enact article three of an act, entitled 'An act relating to husband and wife, and entitled "Husband and Wife,"' approved May sixteenth, one thousand eight hundred and ninety-three") approved March 15, 1894 (see page 176, c. 76, Acts of that year, very radical changes were made. The parts we think it impotrant to copy are:

(i) "Sec. 37. After the death of either the husband or wife, the survivor shall have an estate for his or her life in one-third of all the real estate of which he or she, or any one for his or her use, was seized of an estate in fee simple during the coverture, unless the *right to such dower or interest* shall have been barred, forfeited or relinquished; and the survivor shall have *an absolute estate in one-half of the surplus personalty* left by such decedent."

(j) "Sec. 38. If the wife voluntarily leave her husband and live in adultery, or if the husband voluntarily leave his wife and live in adultery, the party so offending shall forfeit *all right and interest in and to the property and estate of the other,* unless they afterwards become reconciled and live together as husband and wife."

(k) "Sec. 52. A married woman, if she be of sound mind and twenty-one years of age, may dispose of her estate, by last will and testament, subject to the provisions of this act. . . . "

"Sec. 54. All laws and parts of laws inconsistent with the provisions of this act are hereby repealed."

Section 37, last cited, is section 2132, Ky. Stats., section 38 is section 2133, Ky. Stats., and section 52 is section 2147, Ky. Stats. Section 38 copied above, now section 2133, Ky. Stats., is the storm center of this litigation.

For our convenience we have numbered these statutes (a), (b), (c), (d), etc. A casual examination is enough to show that statute (i), now section 2132, displaced and repealed (a), (b), (d), (e), (f); (f) has, however, been since re-enacted in a modified form. See sections 1403-1405, Ky. Stats. In like manner it will readily be seen that (j), now section 2133, Ky. Stats., displaced and repealed (c), (g), and (h).

Attention is called to the following things in connection with these statutes that are sharply called to our attention on this appeal:

The curtesy described in (a), the dower described in (b), the "curtesy or dower" mentioned in (c), "the personal estate" mentioned in (d), the "one-half of such surplus" mentioned in (e), "the personal estate" mentioned in (g) and (h), are superseded by new provisions expressed in (i), by the words "an estate for his or her life in one-third of all the real estate" and "an absolute estate in one-half of the surplus personalty," and in (j) as "all right and interest in and to the property and estate of the other."

Notice also that, as a married woman previous to this time had not ordinarily the right to make a will, she necessarily would die intestate; hence what her husband took under (g) or forfeited under (h) was intestate property. Notice the word "intestate" in (e) and in (g), and then notice the entire absence of all reference to intestacy in both (i) and (j). Consideration of these things can lead to but one conclusion. Whatever a surviving spouse takes under (i) (Section 2132, Ky. Stats.) from his or her dead companion is taken, whether such companion died testate or intestate. This does not mean the surviving spouse can take both what is given by the statute and that given by the will; an election would have to be made, either to take under the statute or under the will. By section 2067, Ky. Stats., a provision is made by which any devisee may disclaim a devise; hence a surviving husband could disclaim devises made him in the will of his wife. Note that there is no provision in section 2067, Ky. Stats., by which a surviving husband who makes renunciation or disclaimer is entitled to his statutory share of his dead wife's estate, such as is made for a widow who makes renunciation under section 1404, Ky. Stats., where it is expressly provided that, when a widow renounces, "she shall receive her dower and distributable share as if no will had been made," yet in Brand's Ex'r v. Brand, 109 Ky. 721, 60 S. W. 704, 705, 22 Ky. Law Rep. 1366, we held that, where a husband disclaimed, he took his statutory share of his dead wife's estate as if no will had been made, and said such rights were "vested by the statute in 'the survivor.'"

Thus we see section 2132 gives to the surviving spouse a definite and certain part of the estate of his or

her dead companion, whether testate or intestate, and it is argued for the appellants that, since a faithful widow would, if she demanded it, be entitled to a definite and certain part of the estate of her dead husband, whether he died testate or intestate, it necessarily follows that an unfaithful wife can take no part of his estate, whether he died testate or intestate.

We would not adopt that view, unless absolutely compelled to do so. That interpretation would serve as a tempting inducement to many greedy kinsmen to make shameless attacks upon the virtue of helpless and recently bereaved widows, and thereby cause a situation intolerable in the eyes of the law. Of course it can be said in response that, for six and a half centuries, the rule has applied to dower, and that with that experience before it the Legislature adopted section 2133; but still the stubborn fact remains that the temptation would be greater if applied to everything a widow could possibly take, than if applied to just what is given her by section 2132.

Appellants say the purpose of section 2133 was to insure the fidelity of the spouse to the marital vows, by making adultery an outstanding offense with unusual penalties, such as attach to no other civic or social relationship. They follow this by a contention that it was the purpose of the Legislature not only to take from the offending spouse those things to which he or she would otherwise be entitled under section 2132, but to work a sort of corruption of blood in the case of the offending spouse, so much so at least that the other spouse could not by will make provision for the erring one.

We are unable to find, in what the Legislature did, support for such claims. Let us remember our question is, not so much what did the Legislature mean to say, as what is meant by what it did say. Can this statute by any possible interpretation be extended beyond what is taken under section 2132? Since a faithful widow can take under section 2132, whether her husband died testate or intestate, does it follow that an unfaithful wife can take nothing, whether her husband died testate or intestate? We think not.

These two sections are parts of the same act. The purpose and intent of the act is to be determined from the whole of it, viewed in the history of the times and

laws then existing. Now let us carefully consider the language of the statute in question.

A careful examination will show that, when (i), or section 2132 was written, the writer thereof had before him (b), or section 41 of the Acts of 1891-92-93, c. 205, and that the language is almost the same. Let us next examine (j), or section 2133, and we find it is almost identical with (c), or section 42 of the Acts of 1891-92-93, c. 205; in fact, they are exactly the same, save that 11 words are stricken from the former and replaced by the 14 words in the latter. Having adhered so slavishly to the same language, it would be doing violence to the legislative intent to extend the list of things forfeitable under section 2133, beyond those forfeitable under (c), or section 42, of Acts of 1891-92-93, c. 205, except in those particulars where the Legislature clearly indicated it should be extended.

By (c), or section 42 of the old act, the thing to be forfeited was the *"right of curtesy or dower."* By (i), or section 2132, the Legislature swept away those old rights, and in their stead gave to the surviving spouse *an estate for his or her life in one-third in all the real estate, etc.* The Legislature was uncertain just what was a proper name to give to this new estate it was creating; it seemed awkward to apply the term 'dower" to a surviving husband's interest in his dead wife's land, so further on in this section it calls this new estate a dower or interest. It then gives to the survivor an absolute estate in one-half of the surplus personalty of such decedent.

Having completed section 2132, it then writes section 2133, again using these words, *"right," "interest,"* and *"estate,"* and in the absence of evidence of their use in a different sense we must presume they were used in section 2133 to convey the same meaning and as referring to the same things as when used in section 2132, and we find that the *right and interest in and to the property and estate of the other,* as used in section 2133, means the *right, interest,* and *estate* created by section 2132.

Let us continue our study of section 2133, noting carefully the language used. The Legislature did not say the spouse offending should take no right or interest in or to the property and estate of the other, but said the offender should forfeit all right, interest, etc., which puts the matter in quite a different light.

The Court of Appeals of St. Louis, Mo., in Casey v. St. Louis Transit Co., 116 Mo. App. 235, 91 S. W. 419, 423, said this: ''The word 'forfeit' has a well-established meaning in the law 'To forfeit' is 'to divest or to suffer divesture of property without compensation in consequence of a default or offense.' ''

The Supreme Court of California, in Newlove v. Mercantile Trust Co., 156 Cal. 657, 105 P. 971, 973, says: ''The term 'forfeit' in law means 'to lose and surrender to an individual or the state (something that belongs to one) for misconduct, or breach of duty—lose title to as a penalty.' ''

We have found no instance in which this court has defined the verb ''forfeit,'' but we had found an opinion in which we defined the noun ''forfeiture,'' and that definition is in harmony with the definitions given above. We refer to the case of Hogg and Pluto Coal Co. v. Forsythe, 198 Ky. 462, 248 S. W. 1008, 1011, where we said: ''A forfeiture from its nature implies the taking away from one of some pre-existing right.'' All of these citations show that, in order to forfeit anything, we must first have it; we must have some sort of title.

When Mrs. Cook became the wife of C. Lee Cook, her rights under section 2132 then vested. Of course, those rights then were inchoate only, and were subject to defeat in many ways; still they were vested. Those rights were something she could lose, something she could forfeit. Those rights and those only are the rights to which section 2133 refers, for until Mr. Cook died she had no rights under his will.

It is a matter of common knowledge that people are not careful about making wills. They put off that duty. Some have a dread of making a will. ''The consolations held out by St. Paul in his first epistle to the Corinthians, though repeated at every grave, have not reconciled man to the idea of death. He has an unconquerable repugnance to it, and to everything connected with it.'' Pearson v. Bonnie, 209 Ky. 307, 272 S. W. 375, 376, 43 A. L. R. 1166. Hence many people have a morbid, almost a superstitious, dread of making a will. Others put it off because they know not how to make their wills. Many wills are lost after they are made, and others are destroyed by offended heirs.

The Legislature knew all this; it also knew that some spouses were untrue, and this provision was made to take

care of such situations in case of intestacy. It knew that spouses sometimes forgave their erring companions, and it made provisions for that. It knew a man then had the legal right to make a will, and, if it had so desired, it could easily have extended the statute to cover a devise in a will by merely adding appropriate words. The failure of the Legislature to so extend this statute forces on us the conclusion that it did not intend section 2133 should be so extended.

Appellants cite authority to support their contention that this court has no power by interpretation to extend or contract the plain provisions of a statute. We agree with them fully; they have correctly stated the law (see 18 C. J. p. 806, sec. 4), but we are unable to see this statute as they see it, and we are not going to accept their suggestion and write into the statute a meaning that the Legislature did not write into it.

This case has been well presented. Skilled and learned counsel have diligently collected and embodied in printed briefs everything they could find that throws any light on our question, and we ourselves have made an investigation of unusual extent. We have received additional aid from a carefully prepared and learned opinion written by Hon. Lafon Allen, the chancellor who heard and determined the case in the trial court, and we are giving here some extracts from his opinion:

"The provision is that the offending spouse shall forfeit 'all right and interest in and to the property and estate of the other.' What 'right' or 'interest' has a wife, for example, in the property of her husband? I think the average man, or the average lawyer, would answer at first blush that she has only the right or interest which the law gives her. And, strictly speaking, she has no other right in what is his. A legal 'right' or 'interest' is something which can be defended and enforced; something that does not depend on the grace of another. The law gives the wife an 'interest' in both the real and personal property of the husband, to be enjoyed after his death, a 'right' which he cannot take from her. To describe a mere hope or expectation of the generosity of another as a 'right' or 'interest' is hardly a correct use of those words.

"The statute, like the divine law, leaves room for repentance and forgiveness, and puts it in the power of a charitable or forgiving husband to defeat the forfeiture in any way he may choose, save alone by will, if plaintiff's construction of the statute be sound. He may take her back, he may give her what pleases him, he may create a trust in her favor, and these things he may do even for an unrepentant wife; but, however sincere her repentance, or how forgiving his disposition, he may not provide for her by will.

"These strange results must give us pause; and when we turn to the reports we are met with another surprise. Although the statute, in its present form, has been in effect since 1894, or a period of 35 years, not a single case has reached the Court of Appeals in which it was claimed or suggested that a devise or bequest to a wife had been forfeited under section 2133. In that time, at least seven cases involving the forfeiture of statutory interests under section 2133 have been decided; but not a single case dealing with forfeiture of property devised or bequeathed.

"Certainly this suggests very strongly that the legal fraternity of this state has been under the impression that section 2133 applies only to cases of intestacy. And the same impression appears to have prevailed generally. Similar forfeiture provisions are to be found in the laws of other states, and yet in no textbood on wills, or on allied subjects, so far as I am advised, whether under the heading, 'Who may Take under a Will,' or 'Restrictions on Testamentary Dispositions' or elsewhere; whereas, every text on 'Descent and Distribution' contains a discussion of this subject.

"It is claimed by the widow that an ambiguity is created by the inconsistency of section 2133 with the statute of wills, which provides (section 4825, Ky. Stats.) that every adult person, of sound mind, may by will dispose of 'any estate, right or interest in real or personal estate that he may be entitled to at death.' This almost unfettered power of disposal by will has been often recognized by the courts, and neither a departure from convention nor a disregard of natural or moral obligations will invalidate

the will. Hoerth v. Zable's Ex'r, 92 Ky. 202, 17 S. W. 360, 13 Ky. Law Rep. 470; Childers' Executrix v. Cartwright, 136 Ky. 498, 124 S. W. 802. Certainly so important and novel a limitation upon testamentary power as plaintiff contends for should not be admitted, except upon a clear showing that it was intended by the Legislature.

"Three widely scattered sections were brought together into a single sentence (section 2133), and a new phraseology was adopted as required, not only by this condensation, but also by the changed nature of the rights subject to forfeiture. The position of this section, following as it does immediately after the section defining the interest given by law to the surviving spouse, makes the conclusion almost inescapable that the rights and interests declared to be forfeited by infidelity were the rights and interests described in the next preceding section. And, if it had been the intention of the Legislature to alter so radically a public policy which had been embedded in Anglo-American law for almost 700 years, would it not have expressed that intent in plain terms which could not be misunderstood?

"Taking all of these considerations into account, I cannot escape the conclusion that the intention of the General Assembly was merely to preserve the ancient rules and that section 2133 is not applicable to gifts made by will."

Before closing this opinion, let us notice briefly the nature and the source of the right of succession, the right to take property from another on his or her death.

The United States Supreme Court, in Magoun v. Illinois Trust, etc., Bank, 170 U. S. 283, 18 S. Ct. 594, 42 L. Ed. 1037, says this right of succession is a mere creature of law, and with the exception of Wisconsin (see Nunnemacher v. State, 129 Wis. 190, 108 N. W. 627, 9 L. R. A. (N. S.) 121, 9 Ann. Cas. 711) we have found no state that does not adhere to the ruling of the Supreme Court.

Since the right of succession is purely a creature of law, let us examine the statutes dealing with that right.

In the case of adults, married women of sound mind have by section 2147, and all other adults have by section 4825, the right to make a will, observing, of course, the

legal formalities of execution. Those two statutes are the principal and most important statutes dealing with the right of succession.

When a man or woman dies, the first question that arises, relative to the right of succession, is: Did the decedent leave a will? If he did, and it is in due form and duly probated, the right of succession is settled.

The law fixes the right of succession in those cases where persons die who were either not permitted to make a will or, if permitted to make a will, omitted to do so, by statutes known as statutes of descent and distribution, which, being enacted to be effective only in case of intestacy, necessarily relate to the estates of intestates only. The statutes of descent and distribution are often referred to as "the intestacy statutes." Therefore every act dealing with the subject of descent and distribution is an act concerning the succession to the real and or personal property of intestates, just as much so as if words to that effect were written in every section of them. Hence sections 2132 and 2133 are sections dealing with intestacy, and have no application to provisions contained in the will of a decedent.

The judgment is affirmed.