# Traughber et al. v. King et al.

(Decided June 20, 1930.)

660

EDWARD C. O'REAR and I. G. MASON for appellants.

COLEMAN TAYLOR for appellees.

OPINION OF THE COURT BY DRURY, COMMISSIONER—Reversing.

By this suit, Mary Traughber and her brothers and sisters sought to obtain a construction of the will of J. M. King, Sr., to have certain lands deeded by King to some of his children charged against the devises made those children, to get certain claims allowed, which we shall call "the trust claims," to get a settlement of King's

estate, and to get an allowance to their counsel for services rendered in so doing.

They got nothing, their petition was dismissed, and they and their counsel have appealed. To enable the reader of this opinion to understand it, we shall give next a family tree showing the names of King's heirs, their relation to him and to each other, and following that, a copy of King's will, the codicil thereto, and the essential parts of three deeds made by King to which we shall refer in our discussion, certain parts of which we have italicized for purpose of illustration. We have copied no part of the description in these deeds further than to state the number of acres described.

| J. M. King, Sr., Died Nov. 24, 1926 | Ada Traughber Died Dec. 13, 1918 | Mary Traughber H. H. Traughber J. K. Traughber Esma Traughber J. T. Traughber Ruby T. Escue. |
| | Ella Rhea Booker Randolph J. M. King, Jr. Queenie Holman Pearl Harned cut off with $1.00 | |

"Adairville, Ky., will of J. M. King, Sr.

"Knowing all men by these presents and the certainty of death and uncertainty of life make this my first and last will, when my funeral expenses is paid and my debts I want my property divided as follows, Divided between my 5 children namely in equal shares, Ella Rhea, Adar Traughber, Booker Randolph, J. M. King, Jr., Queenie Holman the sixth, Pearl Harned to have one dollar as her share I want appointed as administrator J. M. King, Jr., J. S. Rhea, V. T. Holman and W. H. Randolph without bond.

"This June 18th, 1917

"J. M. King, Sr.

"Codicil, Number One, I have today made a deed and attached to this Codicil and it is my desire

that the land mentioned in said deed pass to the persons in deed according to the terms thereof. This November 21st, 1924.

"J. M. King, Sr."

(a) "This deed, made this the 21st day of Nov., 1924, by and between J. M. King, Sr. of the first part and Mrs. Ella Rhea, Mrs. Booker Randolph, J. M. King, Jr., and Mrs. Queenie Holman, of the second part. Witnesseth: That the said first party, for and in consideration of the sum of one dollar, cash in hand to be paid and for the further consideration of the love and affection that first party has for the above named grantees, his children, *and to endow them with a part of his estate* has this day bargained," etc. (152 acres and 23 poles; 17.67 acres, more or less; another tract of about 40 acres).

(b) "This deed, Made this the 12th day of Oct., 1925, by and between J. M. King, Sr., of the first part, and J. M. King, Jr., of the second part.

"Witnesseth: That the said first party, for and in consideration of the sum of One ($1.00) Dollar, cash in hand paid and for the further consideration of the love and affection that first party has for the above named grantee, his child, *and to endow him with a part of his estate,* has, this day bargained," etc., (a tract of about 40 acres).

(c) "This deed, Made this the 12th day of Sept., 1925, by and between J. M. King, Sr., of the first part and Mrs. Ella Rhea, Mrs. Booker Randolph, and Mrs. Queenie Holman, of the second part.

"Witnesseth: That the said first party, for and in consideration of the sum of One ($1.00) Dollar cash in hand paid and for the further consideration of the love and affection that first party has for the above named grantees, his children, *and to endow them with a part of his estate,* has, this day bargained, etc." (152 acres and 23 poles, and 17.67 acres, more or less).

### Construction of This Will.

The first paper (the will itself) presents no difficulty, but the testator prepared a second paper (the codicil), and these two together constitute his will and are to be construed as one document. See Lightfoot v. Beard, 230 Ky. 488, 20 S. W. (2d) 90.

Our problem is complicated by the fact that in this codicil the testator says he has made a deed and that it is his desire that the land mentioned therein shall pass according to the terms thereof. The deed thus referred to is the paper (a) copied just below the codicil. We can look at and consider this paper in determining what the testator meant by this codicil. See Hughes v. Bent, 118 Ky. 609, 81 S. W. 931, 26 Ky. Law Rep. 453; Marshall et al. v. Kent et al., 210 Ky. 654, 276 S. W. 563; Hall v. Hall, 153 Ky. 379, 155 S. W. 755; Johnson v. Jacob, 74 Ky. (11 Bush) 646; Page on Wills (2d Ed.) p. 418, sec. 242: 40 Cyc. p. 1094, sec. 8; 28 R. C. L. p. 112, sec. 64.

When we read deed (a), we find in it these words, *"and to endow them with a part of his (the testator's) estate."* Then going back and reading the codicil, the purpose of the testator becomes evident. He was giving then to the children named in that deed a part of what would be theirs at his death. This land so conveyed was to be a part of what they would take under the will and not an addition thereto.

The right of succession, that is, the right to take the real or personal property of another upon his or her death, is purely a creature of law. See Baldwin v. Cook, 232 Ky. 365, 23 S. W. (2d) 601.

Two general plans are provided by our statutes. One is by will of the decedent, called "testate succession." The other plan is provided for in our statutes of "Descent and Distribution" and is called "intestate succession." In each instance, the law makes provision for taking into account advancements to the claimant of succession, made by the decedent in his lifetime.

In intestate successions the applicable law is found in section 1407 Ky. Stats., and in testate successions in section 4840, which is: "A provision for or advancement to any person shall be deemed a satisfaction in whole or in part of a devise or bequest to such person contained in a previous will, if it would be so deemed in case the devisee or legatee were the child of the testator; and whether he is a child or not, it shall be so deemed in all cases in which it shall appear from parol or other evidence to have been so intended."

It will be observed that by the quoted section an advancement shall be deemed a satisfaction in whole or

in part of a devise in all cases in which it shall appear from parol or other evidence to have been so intended. Such evidence in this case is found in the words, "*and to endow them with a part of his (the testator's) estate.*" From it we know the testator did not by this codicil enlarge the gift to the children named therein and that this land must be charged against the shares of such children. Having thus discovered the testator's intention, we come now to another complication.

Though the testator had signed and acknowledged this deed (a), he never delivered it, and in less than 10 months thereafter he signed, acknowledged, and delivered to these children deeds (b) and (c). These deeds (b) and (c) were not referred to in this codicil, but we have already discovered the intention of the testator from an examination of deed (a). All we have to look for in (b) and (c) is to see if they afford evidence of the persistence of the intention of Mr. King to have the property there conveyed charged against the devises made to those grantees in the testator's will, and there we find the identical expression contained in deed (a).

Thus it is clear the testator conveyed these lands to these children in satisfaction pro tanto of the devises he had made to these grantees in his will.

It is stipulated that the 40 acres, conveyed to J. M. King, Jr., was worth $2,000. There is but little evidence of the value of the tract containing 152 acres and 23 poles and the tract of 17.67 acres that were conveyed to Mesdames Rhea, Randolph and Holman; but, without making any appreciable improvements thereon, these ladies sold these two tracts for $7,000, and we have accepted that as the value of these, so when the debts and costs of administering this estate, and the trust debt to the Traughbers, have all been paid, there should be added to the sum remaining $9,000, the sum thus obtained should be divided by five, and the quotient will be the distributable share of each devisee, and from such quotient there shall be deducted $2,000, and the remainder will be the sum due John M. King, Jr. From this same quotient there should be deducted $2,333.33, and the remainder will be the amount due Mrs. Rhea and a like amount will be due Mrs. Randolph, and also Mrs. Holman.

## The Constructive Trust.

In their pleadings the Traughbers sought to impress upon this estate a constructive trust for the following sums:

(x) $1,000 which we shall call the "donation."

(y) $2,010 with interest from January 1st, 1920, which we shall refer to as the "Allen notes."

(z) $2,691 with interest from January 1st, 1920, which we shall refer to as the "Moon notes."

Miss Ada King married J. D. Traughber. Mr. Traughber was not successful in business, which his wife's family seem to have regarded as an unpardonable sin.

Mrs. Traughber died intestate and a resident of Tennessee, December 13, 1918, and left surviving her the children named above. After the death of his wife, J. D. Traughber sold certain property in Tennessee to which we shall refer presently. This left the Traughber family without a home, and J. M. King, Sr., as a part of his efforts to get them settled, sold to J. D. Traughber on July 16th, 1920, two tracts of land, one containing 152 acres and 23 poles, the other 17.67 acres. This property was conveyed to J. D. Traughber for life with remainder to the heirs of Ada Traughber. The consideration, expressed, was $13,773.50, of which $5,327.85 is receipted for as having been paid in cash and J. D. Traughber gave three notes of equal size for the $8,445.75 that remained. These notes were not paid when due, and J. M. King, Sr., sued his grandchildren and his son-in-law, to collect them; the land was sold, and King purchased same for $6,450. This is the land King afterwards conveyed to his daughters by deed (c).

It is the contention of the children of Mrs. Traughber that this $5,327.85 recited as having been paid in cash was money due them, and that their grandfather King knew this when he got it from Traughber, and it is on this basis that they made their trust claims (x), (y), and (z).

These Traughber children contend, and the proof sustains them, that at the time of the sale of this land by their grandfather King to their father, their grandfather had formed the purpose of giving and did give or, as the witnesses say, donate $1,000 each to Mrs. Rhea, Mrs. Holman, Mrs. Randolph, and J. M. King, Jr., and they con-

tend, and they have some evidence to show, he also intended to give $1,000 to them, and that he did so by acknowledging receipt for more money than J. D. Traughber actually paid him, and that a portion of the $5,327.85 acknowledged as paid in cash was this $1,000.

They seek now to impress upon the estate of their grandfather a constructive trust for this $1,000. This is the trust fund (x) named above, but we do not regard the evidence as sufficient to sustain their claim, and we approve of the action of the trial court in disallowing it.

The alleged trust (y) is founded on this:

On November 20, 1905, there was conveyed to Ada Traughber and J. D. Traughber one acre of land in Robertson county, Tenn. There is in this record the evidence of a Tennessee lawyer that this deed created in said husband and wife an estate by entirety, a peculiar form of land tenure described in 30 C. J. p. 566, sec. 99, and that upon the death of Ada Traughber the entire title to this property vested in her husband, J. D. Traughber. We have some instances of such estates in Kentucky previous to the enactment of section 2348, Ky. St., and for discussions thereof, see Rogers v. Grider, 31 Ky. (1 Dana) 242; Croan v. Joyce, 66 Ky. (3 Bush) 454; Elliott v. Nichols, 67 Ky. (4 Bush) 502; Louisville v. Coleburne, 108 Ky. 420, 56 S. W. 681, 22 Ky. Law Rep. 64.

It seems doubtful if this deed is sufficient to create such an estate, but as this lot was in Tennessee, the question is controlled by the laws of that state, and we must accept the evidence before us as to this deed's effect, and hold that after the death of his wife this became J. D. Traughber's property. J. D. Traughber sold it to some men by name of Allen and turned over to J. M. King, Sr., the three notes received from the Allens therefor, aggregating $2,010. As these were J. D. Traughber's notes received by him for his property, there is no way to impress upon the estate of J. M. King, Sr., a trust therefor. This claim was properly disallowed.

Trust claim (z) is founded on this:

In September, 1915, there was conveyed to Ada Traughber 107 acres of land in Robertson county, Tenn.; the essential parts of this deed being this:

"For the consideration of One Thousand Dollars for which J. D. Traughber has this day executed his promissory note to Mrs. Virginia Ross, due Jan-

uary 1st, 1916, without interest we, G. W. Ross and wife Mattie Ross and Mrs. Virginia Ross have this day bargained and sold and do hereby transfer and convey unto Mrs. Ada Traughber, her heirs and assigns, forever, a certain tract of land situated in the 4th civil district of Robertson county, Tennessee, and founded as follows: (We omit this description.)

"To have and to hold the same to the said Mrs. Ada Traughber, her heirs and assigns, forever, with the condition that J. D. Traughber, husband of the said Mrs. Ada Traughber shall have full control of said land, with power to cultivate, lease or use in any way he may see proper and to sell the same as he so desires."

J. D. Traughber sold this land to T. H. and L. B. Moon after his wife's death and received therefor $1,348.25 in cash and three notes aggregating $2,691, and bearing interest from January 1, 1920, which notes he turned over to his father-in-law, J. M. King, Sr., and which were paid to King.

There was a tract of 55 acres of land conveyed to Ada Traughber by Sallie Powell, and after her death J. D. Traughber by some means sold this land to J. S. Hollingsworth for $4,400 cash. We fail to find, however, any evidence indicating any part of this $4,400 was paid to J. M. King, Sr., and the appellants have not in their brief seen fit to point out such, if it in fact exists.

The Traughber children did succeed, however, in showing their grandfather, J. M. King, Sr., got the Moon notes, and his estate must account for them. Counsel for appellees vehemently insist this 107 acres of land belonged to J. D. Traughber.

They say first that this deed shows he paid for the land, which is true, and if Ada Traughber and J. D. Traughber had been strangers a very different result would follow from that which followed where the husband pays the consideration and the deed is made to the wife. See this which is taken from 39 Cyc. p. 136:

"The rule relative to a resulting trust in favor of the person paying the purchase-money for property conveyed to another does not apply where the conveyance is made to the wife of the person paying

the money; but, in such a case, it will be presumed, in the absence of circumstances showing a contrary intent, that the conveyance was intended as a gift, settlement, or advancement to the wife, and not as a resulting trust to the husband.'' See also, Clay v. Clay, 72 S. W. 810, 24 Ky. Law Rep. 2016.

It is also argued this deed gives to J. D. Traughber the fee-simple title to this property, because it gives him the right to use and lease, cultivate, sell, etc. A naked power of sale vests no interest in the subject-matter in the donee, but appellees contend that where the instrument creating the power manifests the intention that the donee shall have all the beneficial interests in the property, it vests the title in him. If this power of sale had been followed by some words to show the proceeds of the sale should be his, that would be true; but it was not.

Again the fact that Ada Traughber and J. D. Traughber were husband and wife must be considered. In view of the married relation between these two and the absence of words to indicate this right to cultivate, lease, etc., was exclusive and that the proceeds of the sale should be his, we do not regard this as being sufficient to vest title in J. D. Traughber. The title of this property was vested in the wife, and to the husband there was given the collateral or naked power of control, cultivation, etc. See 49 C. J. p. 1252, sec. 11.

"While a power may be coupled with an interest, or may be given to one having an interest or estate in the subject matter, a power does not of itself imply ownership, but, on the contrary, excludes the idea of any absolute interest or fee simple in the person possessing the power; nor does a power of itself give the donee or grantee any interest or estate in the property.'' See 49 C. J. p. 1276, sec. 89.

The appellees cite and rely upon the opinion of this court in City of Louisville v. Anderson, 84 S. W. 573, 27 Ky. Law Rep. 143, as supporting their contention that this was the property of J. D. Traughber. To us this appears to be an authority against them.

J. D. Traughber sold this property for $4,039.25, and of that $2,691 with interest from January 1, 1920, is traced into the hands of J. M. King, Sr. This $2,691 was

the proceeds of the sale of the property of Ada Traughber and belonged to these appellants, her children, and the proof shows King knew that, when he got the notes representing this $2,691 from J. D. Traughber. These appellants could before this transfer have recovered these notes from Traughber, and when J. M. King, Sr., took them from Traughber under the circumstances he did, his estate must account for them. See Dority et al. v. W. E. Rogers & Co., 223 Ky. 238, 3 S. W. (2d) 636.

When he got these notes under these circumstances the law makes him a trustee, whether he intended to assume such relation or not. See Nolan v. Howard, 221 Ky. 33, 297 S. W. 942. There is competent evidence in the record to show that he so regarded himself, but whether he intended to assume that relation or not the law thrusts it upon him. Constructive trusts are created by what we do, regardless of our intentions. Trust claim (z) is allowed as a general claim against the estate of J. M. King, Sr.

Before passing on, we will notice a contention made by appellees that these children cannot claim this fund now because they did not assert it in the suit to enforce the lien on the land conveyed Traughber by King. They could have done that, had they seen fit to do so, but their right to do that is not in conflict with their right to assert this against J. M. King, Sr., as they elected to do.

This brings us to that branch of this appeal wherein the appellant I. G. Mason is interested. Mason represented these children of Ada Traughber and instituted for them this suit to settle the estate of J. M. King, Sr. He asked the court to allow him a fee of $500 for his services, which the court refused to do. Appellees say Mason has never prosecuted an appeal from this order. They are mistaken. He is one of the appellants, he so appears in the statement of appeal filed, and that statement not only refers to the main judgment by page but also refers to the page whereon this is found:

"The motion of I. G. Mason for a fee of $500.00 against the estate of J. M. King, for instituting and prosecuting this action for the settlement of the said estate having been considered it is ordered that said motion be and it is now overruled to which ruling the said I. G. Mason, excepts and objects, and prays an appeal to the Court of Appeals which is granted."

670

The court refused to allow this fee upon the idea that Mason had represented the children of Ada Traughber alone, while the executors and other heirs were represented by other counsel. In allowing attorney's fees, the court does not look so much to "who is representing the executor," as it does to "who is representing the estate." These executors are J. M. King, Jr., J. S. Rhea, V. T. Holman, and W. H. Randolph. By the deeds and gifts mentioned, J. M. King, Jr., Mrs. Rhea, Mrs. Holman, and Mrs. Randolph have already received the lion's share of this estate, and all the efforts of counsel other than Mason have been to help them keep that, and it is Mason that really represented the estate. He asked for a fee of $500 for his services; it is reasonable, and it is now allowed.

The judgment is reversed for proceedings consistent herewith.