JUDGE PETERS
delivered the opinion op the court.
This action ordinary was brought by appellee, in 1869, to recover of appellant (a foreign corporation, as is alleged) the sum of one thousand and eighty dollars for landing its boats at a wharf or landing at Kentucky City from February 1, 1868, to July 10, 1869, of which wharf and landing he claims to be the owner.
The number of landings made by its steamers at the point designated between the periods named in the petition is not denied by appellant, nor is the reasonableness of the prices controverted. But it denies that appellee is or was the owner of the bank of and landing on the river, or that the same were in his possession. It also denies that appellee during said period, or at any time whatever, had made and kept a wharf or wharfs, or had made any improvement for the reception of boats on the bank of the river in front of Columbus, at the place designated or at any other place. But it is averred in the answer that during the years 1868-69 appellant’s boats landed at a wharf-boat kept by Halladay & Co. in front of that portion of the river-bank owned and possessed by the Mobile & Ohio Railroad Company as depot-grounds, which boat was kept by the authority and in the interest of said railroad company; that it is necessary to the successful operation of said company’s railroad; that it is kept at said point as matter of right in said company, and not by permission of appellee.
The fourth paragraph of the answer controverts appellee’s right to recover, on the ground that the Mississippi River, for the landing on the bank of which in front of Columbus appellee claims a right to demand wharfage, is a navigable stream of the United States, is the boundary - line between states, and that any attempt to charge any tax, toll, or wharf-age by appellee or any one else is and would be in violation of the constitution and laws of the United States.
*140 A demurrer having been filed by appellee to the several paragraphs of the answer, was overruled as to all but the fourth, and as to that it was sustained.
The cause was then tried by a jury, which resulted in a verdict and judgment in favor of appellee for the amount claimed by him; and a new trial having been refused, appellant now asks a reversal of that judgment.
From the bill of evidence allowed in the ease it appears that on the trial appellee introduced a deed from himself to the Mobile & Ohio Railroad Company for a lot or parcel of land on the bank of the Mississippi River, to begin at the southeast corner of the Barton Mill lot (so called), which is three hundred feet measured perpendicularly from the center line of the location of the railroad; thence eastwardly, and parallel to said center line of the railroad, thirteen hundred and twenty feet to Center Street “ proposed;” thence southwardly with Center Street, and parallel with the river-bank, five hundred and fifty feet; thence westwardly, and parallel to the center line of the railroad, to the brink of the river-bank; thence up said river with the meanders thereof to the southwest corner of the Barton Mill lot; thence with the south boundary of said Barton Mill lot twenty-seven poles to the beginning; including all the rights, privileges, and immunities from the top of the river-bank to the channel along the entire front. After providing in the deed for a public way, to be furnished by said railroad company, for crossing the railroad tract from South to North streets, for the use of the public, of a specified width, and to furnish access to passengers from North and South streets to depots and cars not further than six hundred feet from the river-bank; for the appropriation by said company of a strip of land out of that conveyed to it, on the north and south sides of its depot-grounds, of at least thirty feet in width, for a street, on' condition that the grantor appropriates a like width of adjacent ground for the same *141 purpose; it is then provided that said company is not invested with any right to have a fei’ry or ferry privileges across said river from any portion of the ground thereby conveyed, except for the transportation of cars or trains of cars belonging to the said company, or for the transportation of passengers, freight, baggage, etc., from and to their roads or any other railroads, etc.
The deed contains a further grant to said company of the privilege and unrestrained right to construct and use any railroad tracks, turn-outs, and switches it “may desix’e” over and upon any lands owned by the gx'antor in Hickman County, and concludes with a warranty of right and title to the land therein granted for the uses and purposes expx’essed, as well as all privileges, rights, uses, and easements included in the grant.
Bullock, a witness introduced by appellee, proved that the land covered by said deed is within the limits of Kentucky City (now a part of the town of Columbus), and that Kentucky City was carved out of a tract of one hundred and fifty acres of land claimed by appellee for many years prior to the Avar, and px’evious to the establishment of said Kentucky City; that immediately after the execution of the deed aforesaid the railroad company took possession of the land conveyed to it; that no question of wharfage as between appellee and said company had ever been raised, but since then appellee has claimed whax’fage of said company as an incident to the land he conveyed, and that the company had always denied his right and resisted his claim. He also px’oved that the small map dated-day of-was used on the ground on the day the lots were sold; by it they were sold, and it was in the hands of bidders for and buyers of lots; that the large map of said city was not correct — the lots as shown by it are incorrectly numbered, but the blocks of lots are correctly shown on it. On being cross-examined the witness proved that the map dated August 15, 1855, was prepared by the direction of the *142 trustees of Kentucky City, was lithographed by them, and •circulated throughout the United States, as generally as possible, as an advertisement of the sale of lots in Kentucky City, which sale took place in October, 1855. He also stated that' the smaller map exhibited by appellee was prepared by the trustees of said town, and that as much pains had been taken by the trustees to exhibit and publish it as the other map; that the trustees of said city never did set up any claim to the right of wharfage as against appellee. The map recorded in the county court clerk’s office he said he never saw before it was exhibited on the trial, and he did not know where the original map was.
There is an agreement of the parties, copied in the record, to the effect that the two maps exhibited on the trial in the court below should be brought up and read on the trial in this court, and they are before us; and a copy of the l’ecorded map or plan of Kentucky City is also before us.
Henshaw & Roberts were introduced to establish appellee’s right to the land on which Kentucky City is located by a continuous advei'se possession of more than twenty years; and he proved by Akin and others that they, as his agents, had, in the early part of 1868, planted several posts in the ground to tie boats to, and had with considerable labor graded the bank of the river, but that the grade of the bank had been destroyed by the rising and falling of the river; that boats had landed above the wharf-boat and taken on lumber; that the bank there was in its natural state, and was perpendicular; but boats frequently exacted temporary slides to convey lumber down the river-bank and on board; and boats belonging to appellant had occasionally landed above the wharf-boat to load and unload freight. They also proved that the bank of the river in front of Kentucky City is almost continually falling in, and boats generally land near and make fast to Halladay’s wharf-boat, which they as transfer agents keep for the Mobile *143 & Ohio Railroad Company; that it is an excellent boat; that the bank there is kept in good repair; and that Halladay & Co. have all necessary appliances for shipping and receiving freight, and nearly all freight shipped from and received at Columbus passed through their wharf-boat.
Vance, introduced by appellee, proved that during the war Federal troops occupied the ground belonging to said railroad and the landing in front of the same; that they made some improvements on the wharf by grading and graveling the street between the depot-buildings and the top of the river bank; that the bank falls in rapidly, and nothing remained of said improvements in 1868 except the gravel on the street or passway; that the wharf-boat and appliances kept by Halladay & Co. make an excellent landing, and all freights that go through their hands are easily and speedily gotten to and from steamboats; that a good foot-way for passengers was at all times kept by them; that the bank at which said wharf-boat was located was protected and kept in repair; but that the landing there would be very soon destroyed by the falling in of the bank, if it was not protected and preserved by the proprietors of said wharf-boat; and that their boat is one of the best on the river, and with it every thing is provided for the accommodation of passengers and shippers.
Appellee’s petition to the court of the county of. Hickman to establish Kentucky City, the order of said court establishing the same, and a copy of the plan of the town, which was recorded in the office of the clerk of said county court, and the large map dated August 1, 1855, were read as evidence to the jury.
This petition of appellee as aforesaid, dated 20th of March, 1855, contained in substance the following statements: that the petitioner was the owner and proprietor of one hundred and fifty acres of land adjoining and just below Columbus, on which he asked the County Court of Hickman County to *144 establish a town, “under the laws of Kentucky,” describing the portion of the tract on which said town was to be established as lying between the Mississippi River and a line extending in a northern and southern direction along the side of the bluff two hundred yards below the line of the bluff; to include in said town that portion of said 150-acre tract lying between the river and two hundred yards of the line of the bluff, and between the southern boundary-line of Columbus and the southern boundary-line of said' 150-acre tract.
Reserving and excepting out of the boundary of said proposed town the lot of land within the boundary of the 150-acre tract claimed by Barton, and reserving to himself all ferry privileges in regard to a ferry and ferry-landing on the Mississippi River pertaining to said land, or to him as owner and proprietor thereof, he expressed a desire that the town should be called Kentucky City, and that E. I. Bullock, ~W. H. H. Taylor, and himself should be appointed trustees of said town.
At the April term, 1855, of the Hickman County Court, by an order of said court, said town was established on the land of appellee, within the boundary as set forth in his application therefor, to include about one hundred acres, as stated in the order, by the name of “Kentucky City;” and the persons nominated in the application for trustees were appointed. In the order the right to a ferry and ferry privileges is reserved to appellee; but as by the law of the state authorizing the several county courts thereof to establish towns on such applications, when it is deemed by said courts advantageous and necessary for the public good, it is required that the title to the tract of land so designated shall vest in trustees and their successors for the purposes of the town, it might- be a question of serious import whether the owner of the land would have the legal right to reserve to himself any part of the tract thus dedicated, and especially that part which would be necessary *145 to promote the commerce and general prosperity of the proposed town. That question, however, we do not deem necessary to be decided in this case.
The land designated for the location of Kentucky City was laid out into streets, alleys, and convenient lots, the lots numbered and the streets named, and the plat of the town, which was presented to and recorded by the clerk of the Hickman County Court, bearing date the 22d day of October, 1855, has the following inscription on the space between the termini of lots and the river:
iC Wharfage and ferry 'privileges not cledieaied Reserved to B. E. Grey, E. I. Bullock, W. H. H. Taylor Ben Edwards Grey.”
Whether that is to be understood as meaning that all wharfage and ferry privileges not dedicated are reserved to B. E. Grey, E. I. Bullock, and W. H. H. Taylor, or that no wharfage and ferry privileges are dedicated, but the same are all reserved to the gentlemen named, may not be entirely free from doubt, and depends very much upon the manner of punctuating the sentence. But be it the one way or the other, it is quite certain that the reservation is not exclusively to appellee. The sentence will not admit of such a construction, and the position of the name Ben Edwards Grey where it appears the second time, partially under and extending further out than the other names, forbids the conclusion that such was the intention; so that if these benefits are reserved at all, they are not to appellee exclusively.
But the large map of Kentucky City, made out in very handsome style by the trustees, signed by them, lithographed, and sent out far and wide throughout the United States to invite and allure bidders to attend the sale of lots in said city, to come off on the 22d of October, 1855, as Bullock proves, describes the city as being situated immediately on the east bank of the Mississippi, on an elevated and beautiful point *146 fifteen miles below the mouth of the Ohio River; that the northern terminus of the Mobile & Ohio Railroad is there; that twenty acres of ground within its corporate limits have been devoted to depot purposes, stations, machine-shops, foundries, etc.; that the Mississippi River, the great father of waters, pours his vast floods along the margin of this city, bearing upon his bosom the aggregated freights of the Missouri, Ohio, and all their lengthy and numerous tributaries; that the river-front of Kentucky City furnishes as safe and secure harborage for every class of vessels as can be found along the entire course of the Mississippi, with deep water at all stages, and with permanent and enduring banks; that no point had been found combining so many advantages and such facilities of access and outlet both by railway and river. On this map is represented an open space or slip of ground extending the whole length of the town, bordering on the termini of lots and streets next the river on the one side and the water’s edge on the other, with no intersecting lines dividing said space or running across it; and near the center of it the words “ Front Row” are inscribed, with beautiful capitals, which could not escape the notice of any who might see the map. This space is conspicuous upon it, visible to all and every one into whose hands the map might be placed, without an exception or a reservation.
As was held by this court in Rowan’s ex’r v. Town of Portland (8 B. Mon. 232), this map must be taken as the written and recorded representations of the town; of its localities and divisions; its streets, alleys, thoroughfares, commons, and public grounds, so far as they are indicated by it; and in these respects must be regarded as having entered into and formed a part of every contract for the sale of lots in the town by their numbers or position in the plan, and as having been adopted and confirmed by every conveyance of a lot described by a similar reference. And every purchaser of a *147 lot purchased and paid for, as appurtenant thereto, every advantage, privilege, and easement represented on said plat or map as belonging to it. Every conveyance therefore of any lot or parcel of ground in .said town should be regarded as a conveyance of a proportionate right to all of these appurtenances as represented on said map.
But it is insisted that the small map of the town bearing no date was the one used on the day of the sale of the lots, and the auctioneer sold by it; and that as the reservation of wharfage and ferry privileges is expressly made to appellee on it, the same should be enforced. Passing over the discrepancy between the asserted reservation on that map and that on the recorded plan of the town, the names of Ben Edwards Grey, E. I. Bullock, and W. H. H. Taylor, as they appear on the recorded plat, being omitted on the small map, and the criticism on the terms in which the reservation is made, there are unanswerable objections to giving to that map any consideration in this case. It is without date. The deed from Grey to the Mobile & Ohio Railroad Company bears date 17th of September, 1855, more than one month before the public sale of lots, when for the first time said small map is heard of, for no witness proves that it was ever seen before that day.
The Mobile & Ohio Railroad Company made its purchase one month after the publication and circulation of the large map, and before the small one had an existence, so far as we are informed. The larger map must be regarded as being an inducement to, and in fact forming a part of the consideration for making the contract of purchase, and said company is entitled to all the benefits promised and illustrated by said map. It took the title conveyed by appellee free from all wharfage privileges. As his deed contains no reservation of such privileges, it in terms divested him of the title, and consequently of every privilege and benefit not expressly reserved.
*148 Moreover, the claim here asserted by appellee is in conflict with the terms on which he, in his application to the county court, proposed to establish the town. In that proposition ferry privileges alone were reserved, and in the order of court establishing the town the reservation of ferry privileges is made. No other right or privilege is contained in the proposition to establish the town, and none other was allowed or granted by the order of the court; and the fact that this particular right or privilege eo nomine was secured to the grantor excludes the conclusion that any other was.
We can not concur in opinion with the learned and zealous counsel for appellee that appellant is concluded by the opinion and judgment rendered by this court in the case of The City of Columbus v. Grey (reported in 2 Bush, 476).
It is undoubtedly true that parties to an action or a suit in equity are bound by the judgment or decree pronounced therein while it remains in force, and will not be heard in an effort to litigate and retry the same matters already adjudicated, and that their privies are alike bound and barred; but judgments and decrees do not conclude any other persons except parties thereto and their privies. Appellant certainly was no party to the suit above cited. It is not named as such in the record thereof, and it can not be barred by that judgment as party. Can it be barred as privy? The general division of privies is into those of contract; estate, and blood. There can not be privity of contract in this case between the city of Columbus and the railroad company. The latter claims under a deed directly from appellee, prior to and independent of any dedication of the lands to the city, and its rights were subordinate to the rights of the company to the extent of its deed. That of contract can not exist, because, anterior to the dedication made by the' map, the company had consummated its purchase, and had the legal title to all the land covered by its deed, and held the same, with all privileges *149 and immunities, independent of all others; and that of blood could not exist. The judgment in the case supra therefore can not bar appellant. Besides, the parties being different, the facts in the two eases are very different; and while we know that there is such a case as The City of Columbus v. Grey (supra), still the record of that case is not made a part of this action either by the pleadings or evidence; and unless the judgment in that case was pleaded it could not be made a bar in this action. (Allin’s heirs v. Hall’s heirs, 1 Marsh. 525.)
From the forégoing it appears that appellee had failed to make out a cause of action in himself, and the court below should have awarded a new trial. We need not therefore inquire into the propriety or impropriety of giving and refusing instructions.
Wherefore the judgment of the court below is reversed, and the cause is remanded with directions for a new trial and for further proceedings consistent herewith.
Judge Lindsay did not sit in this case.