## Marshall, et al. v. Kent, et al.

(Decided October 20, 1925.)

### Appeal from Jefferson Circuit Court (Chancery Branch, Second Division).

1. Wills—Will, Not Ambiguous, Must be Construed According to its Terms Alone.—A will speaks for itself, and, when not ambiguous, must be construed according to its terms alone.

2. Wills—Evidence Aliunde, when Admitted is Admitted Only to Explain Obscurity in Will.—Evidence aliunde, when admitted, is admitted only to explain obscurity in will, and never to contradict it or supply what is not in it.

3. Wills—Will Speaking with Reasonable Clearness Precludes Hearing of Other Testimony.—Will speaking with reasonable clearness precludes hearing of other testimony, even though such testimony tends to show different intent from meaning conveyed by strict and primary sense of words used.

4. Wills—Words, if Sensible in Themselves when Taken in their Primary Sense, Invariably Must be Taken in that Sense.—Words in will, if sensible in themselves when taken in their primary sense, invariably must be taken in that sense, although the most conclusive evidence is tendered of intention to use them in another sense.

5. Wills—Solving of Doubt in Will by Recourse to Context Precludes Resort to Extraneous Evidence.—Solving of doubt in will by recourse to context precludes resort to extraneous evidence.

6. Wills—Map Attached to Will and Incorporated Therein by Reference Must be Considered as having been Copied into Each Devise Referring to it.—Map attached to will, and incorporated therein by reference, must be considered as having been copied into each

devise referring to it, regardless of the purpose for which the map was attached.

7. Wills—Where Map was Adopted by Testator as Part of his Will, Testimony as to its Purpose was Incompetent.—Where a map was adopted by the testator as a part of his will, testimony as to its purpose, that is, that was made expressly for incorporation in his will as testified by the maker of the map, or for another purpose as testified by a defendant, held incompetent.

8. Easements—Conveyance of Land by Reference to Map or Plat Gives Grantee Right of Way Over Ways Shown on that Map which Bound or Touch Land Conveyed.—Conveyance of land by reference to map or plat gives right of way over ways shown on that map which bound or touch land conveyed as an easement appurtenant to that land.

9. Easements—Right of Way Granted to Devisee Over Land of Other Devisees Held Private Right, Though Intended for Public Use.—Right of way granted to devisee over land of other devisees held private right, though intended for public use.

10. Wills—Private Right of Way Granted in Will but Intended for Public Use Remained Private Right in Spite of its Nonacceptance or Improvement by Public Authorities.—Private right of way granted in will to devisee but intended for public use remains private right even though there be no acceptance or improvement by public authorities, and is not extinguished by abandonment of public right.

11. Wills—Recording of Map Attached to Will Granting Right of Way Intended for Public Use Held Not Necessary to Preserve Such Right of Way.—Recording of map attached to will granting right of way intended for public use held not necessary to preserve such right of way.

12. Wills—Words in Will Held Insufficient by Themselves to Create Easement.—In a will devising tracts of land, the words following such devises, "and of easements and appurtenances thereunto belonging," held insufficient by themselves to create easement.

13. Wills—Will Held to Give Each of Four Devisees Right of Way Over Routes on Land of the Other as Indicated on Map Attached to and Made Part of Will.—Will held to give each of four devisees right of way over routes on land of the other as indicated on map attached to and made part of will.

14. Appeal and Error—Propriety of Allowance of Fee to Special Commissioner Held Not Subject to Review, where Commissioner was Not Made Party to Appeal.—In action to establish easement rights, allowance to special commissioner of fee for surveying rights of way held not subject to review, where the commissioner was not a party to the appeal.

BURWELL K. MARSHALL, FRED FORCHT and SHACKELFORD MILLER for appellants.

TRABUE, DOOLAN, HELM & HELM for appellees.

Opinion of the Court by Judge Clay—Affirming.

This is an appeal from a judgment sustaining Mrs. Olivia Veech Kent's claim to certain rights of way over adjoining lands.

After a careful consideration of the record we have reached the conclusion that the chancellor's decision was correct. As the facts and applicable principles of law are fully stated and ably discussed in the chancellor's opinion, we adopt his opinion as the opinion of this court. His opinion is as follows:

"By his will, Richard S. Veech divided his 'Beargrass Farm' into four tracts and devised one of them to his son, Bethel B. Veech, and one to each of his three daughters, Mrs. Marshall, Mrs. Kent and Mrs. Wood.

"By this action Mrs. Kent asserts a right to pass westwardly, by a defined route, across Mrs. Marshall's tract to Cannon's lane, a public highway, and eastwardly, by a defined route, across Mrs. Wood's tract and along the western boundary of Bethel B. Veech's tract, to Breckinridge avenue on the north, and to Hike's Point road on the south, both public highways.

"This right is denied by Mrs. Marshall, and also by defendant Murphy, who has purchased Mrs. Wood's tract. Bethel Veech does not answer.

"Mrs. Kent says she has this right both by express grant and by implication; that is to say, that her father gave it to her expressly in his will, and that, if this be thought doubtful, then it was implied in the severance of the farm into these four tracts, since there was, at the time of her father's death, an existing and constantly used passway along the route claimed by her (with a deviation at one or two points due to temporary obstruction), which passway was well marked by travel over most of its length and was enclosed by fences for almost half of its length. These circumstances, it is claimed, bring the case within the doctrine repeatedly announced by the courts of this state, as follows:

" 'It may be considered as settled in the United States that, on the conveyance of one of several parcels of land belonging to the same owner, there is an implied grant or reservation, as the case may be, of all apparent and continuous easements or incidents

or property which have been created or used by him during the unity of possession, though they could then have had no legal existence apart from his general ownership.' Irvine v. McCreary, 108 Ky. 495; Stone v. Burkhead, 160 Ky. 49; LeBus v. Boston, 107 Ky. 98; O'Daniel v. Baxter, 112 Ky. 334; Henry v. Koch, 80 Ky. 391.

"(1)   The validity of the first claim must be determined solely by the terms of the will, if that instrument is unambiguous.   Indeed, a will must always be construed according to its terms alone, and if evidence *aliunde* be admitted at all, it is admitted only to explain what is otherwise obscure and never to contradict the will or to supply what is not there. The will must be allowed to speak for itself.   If it speaks with reasonable clearness, then no other testimony will be heard, even though its tendency be to show that the testator's meaning was different from the meaning conveyed by the strict and primary sense of the words used.   Sir James Wigram, in his classic canons of construction, declares that where the words employed by the testator are 'sensible' in themselves, when taken in their primary sense, it is 'an inflexible rule' that they must be taken in that sense, although the most conclusive evidence be tendered of an intention to use them in another sense. And it is laid down in the books that where doubt may be fairly resolved by recourse to the context, then nothing outside of the will should be resorted to.

"In the present case, testator attached to his will a map, showing the boundaries of this farm, and also the division lines by which it was severed into four tracts numbered 1 to 4, inclusive, which were devised respectively to Mrs. Marshall, Mrs. Kent, Mrs. Wood and Bethel Veech.   This map he expressly made a part of his will and referred to it in each of these four devises.   The identification of this map, as a document existing at the time the will was executed, is complete, and no point is made that anything is lacking to satisfy the familiar doctrine of incorporation by reference.   We must, therefore, consider this map as being as much a part of the will as if it had been copied into each of these devises and on the very paper on which the devises themselves were written.

"Everything shown by that map must, therefore, be considered as being a part of R. S. Veech's will. And I think it does not matter when, or for what purpose, the map was made. Whether it was made expressly for incorporation in his will (as testified by the witness, Young, who made the map) or for another purpose (as testified by defendant, Burwell K. Marshall), it was adopted by testator as part of his will and its effect is the same in either state of case. I think, therefore, that the testimony of these witnesses, upon this point, is both incompetent and immaterial.

"This map not only shows the outer boundaries of the farm and its division into four tracts, numbered 1, 2, 3 and 4, but upon each of these divisions is written, in the testator's hand, the name of the person to whom that tract was devised; and at the bottom of the map there appear, over testator's signature, the words, 'Map referred to in paragraph of my will No. 1,' with the date 'September 26, 1917,' below the signature, this being the date of the execution of the will.

"Across the face of this map, extending from the western boundary of Mrs. Marshall's tract, at Cannon's lane, to the eastern boundary of Mrs. Wood's tract, a distance of about 5,600 feet, are drawn two parallel lines, in red ink, and between these lines appear the figures and words, '40′ right of way.' The distance between these lines is approximately one-tenth of an inch, which, on the scale of the map, would represent forty feet. At their eastern extremity, these lines connect with other similar lines, having a general north and south direction and following the boundary between the tracts devised to Mrs. Wood and Bethel Veech, within which lines appear the figures and words, '30′ county road.' This strip of ground connects, at its northern end, with Breckinridge avenue, a public highway which ends at that point, and at its southern end with Hike's Point road, a public highway which ends at that point.

"These lines, words, figures and symbols are as much a part of the Veech will as any other part of the map—as much, indeed, as any other part of the testamentary paper—and must be given their natural significance. As to the 'forty-foot right of way,'

the significance of these words and of the lines enclosing them seems to me very clear. Everyone knows what a right of way is and that a forty-foot right of way is a right of way forty feet wide. Parallel lines, such as are shown on this map, are customarily used to show the location of such a way. No one can doubt that the appearance upon a map of such a right of way leading from one tract of land through another tract to a public highway, signifies that the owner of the first tract has the right to pass by that route from his land to that highway. And if the other end of the right of way gives access to other highways, it would signify that there was a reciprocal right of passage in the opposite direction. So that in the present case, it seems to me that the only meaning that can be given to this feature of the map is that Mrs. Marshall and Mrs. Kent and Mrs. Wood were given by their father the right to pass, each across the land of the other, upon the route shown. Otherwise this portion of the will would be entirely meaningless.

"If this were a topographical or pictorial map, showing the configuration of the ground together with other landmarks, such as dwellings, barns, stables, training track, and other natural or artificial features, it might be said with some plausibility that the indication of the right of way on the map was merely descriptive or pictorial, since the evidence shows that the farm still contains some physical remains of an ancient railway embankment which formerly traversed this land by approximately this route. But this is not such a map. There is nothing on it which does not relate to the dispositions made by this will, unless it be the indication of ways now in dispute. This circumstance, it seems to me, makes very improbable the claim that the indication of ways across these tracts were intended to have no testamentary significance.

"There is a rule of law, adopted in this state almost from its foundation, that a conveyance of land by reference to a map or plat gives to the grantee a right of way over any ways shown on that map which bound or touch the lands conveyed, as an easement appurtenant to that land.

"This is a private right, even though the ways be intended for public use, and it exists even though there be no acceptance or improvement of such ways by the public authorities, and is not extinguished by the abandonment of the public right. Nor is the recording of the map necessary. Rowan v. Portland, 8 B. Mon. 232; Memphis & St. Louis Packet Co. v. Gray, 9 Bush 137; Elizabethtown & Paducah R. Co. v. Thompson, 79 Ky. 52; Newport Pressed Brick Co. v. Plummer, 149 Ky. 534; Matney v. C. & O. Ry. Co. 170 Ky. 112.

"I can conceive of no reason why this rule should not apply to private ways, as well as those intended ultimately for public use. Nor is there any reason why it should not apply to lands devised equally with those conveyed by deed.

"It is frequently said that the law is jealous of a claim to an easement and that the person claiming it must prove his right by showing a grant in express terms or by necessary implication. And a distinction is drawn between the grant and the reservation of an easement, the deed being construed against the grantor; so that more is required to show the reservation by him of an easement upon his grantee's land than is required to establish the grant of an easement upon his own land in favor of the land conveyed.

"But these doctrines seem to me to have little application to the present case. These devisees stand upon an equality. There is no room here for the operation of any presumption which might affect the relation between grantor and grantee. Testator was making provision for his children, which provision he repeatedly declared in his will was intended to be equal. If he intended to grant this right of way (as I think he did), he intended not to burden unequally the property of one child with a servitude to that of another, but as he doubtless thought to confer a common benefit by giving reciprocal rights of way to each across the lands of the others, so that each might have ready access to the principal highways of the vicinity. Whether or not this was a wise provision; whether or not it unequally benefited or burdened one or the other of these devisees; what effect it may have had upon the value of one or the other of these tracts; these are matters to which, I think, I

cannot attend. These were questions for testator's decision and not for mine. Doubtless a provision which obviously would prove ruinous to the property of one or other of his devisees would in itself raise a doubt that it was intended, and to that extent the effect of the disposition might have a tendency to negative the intention claimed. But there is nothing of the sort here. And, if I were permitted to go outside of the will, the circumstance, shown by defendant's evidence, that testator had himself offered this very route to the county authorities for the construction of a public road, would destroy the claim that the injurious effect of the disputed disposition shows that testator could not have intended it.

"As to the '30-foot county road,' the case for plaintiff is, perhaps, not quite so clear. It may be said that to designate upon a map a strip of land as a 'county road,' where there is no road (as appears in the evidence) does not, of itself, give a clear indication of testator's intention. And here, I think, I have the right to avail myself of so much of the evidence as enables me to put myself in the situation of testator when he made his will and so better to understand what the terms of the will mean.

"The evidence shows that a plan had long existed in testator's mind to have the county authorities construct a road through his farm, connecting the two 'culs-de-sac,' Breckinridge avenue and Hike's Point road, thus making a thoroughfare from the Shelbyville turnpike to the Taylorsville turnpike, two of the great avenues of approach to the city of Louisville. More than once he offered to give this strip of land, designated on the map as 'county road,' to the county authorities for the construction of a public road. I think the evidence makes it clear that he expected that sooner or later—perhaps before his death—this would be done, and in these circumstances I think the designation, in his will, of this strip of land as a 'county road' shows with sufficient clearness an intention that the devisees of these four tracts of land should have the right to pass, by the 'forty-foot right of way' to the 'county road' and thence, north and south, to the great highways of the district.

"But without the aid of this intrinsic evidence of the sense in which testator used these expressions,

the conclusion, I think, must be the same. If it be true that the indication on a map of suburban property of a 'street' where no street exists, gives to the purchaser of adjacent land a private right of way over the ground so described—and of this there can be no question—then the same effect must be given to the designation upon such a map of a 'county road,' which is, so to speak, a country street. Nor is this right affected by nonuser, no matter how long continued, nor by the impossibility of using it in its condition at the time of the grant.

"The point is made by plaintiff that in the eighth clause of his will, which follows the devises involved here, testator declared that each of these devises included the buildings upon the land devised 'and all easements and appurtenances thereunto belonging.' I am doubtful how much this strengthens plaintiff's claim, if it does so at all. It is certain these words are not sufficient, of themselves, to create an easement, and the only effect they can have is to afford a sort of confirmation of what is shown by the other parts of the will. I think plaintiff's case is made out without the aid of this clause.

"I conclude, therefore, that each of these devisees was given, by the express terms of their father's will, a right of way over the routes indicated on the map. It is unnecessary, therefore, to pass upon the question whether or not there was an implied grant of such a right. In reaching this conclusion, I have attended strictly to the terms of the will and have disregarded (with the slight exception indicated above) all of the depositions given in this case. In these circumstances, it would be superfluous to pass upon the exceptions to depositions taken by both sides.

"Counsel may prepare judgment in accordance with the conclusion announced."

Aside from the questions discussed by the chancellor, it is insisted that he erred in allowing the special commissioner, who surveyed the rights of way, the sum of $75.00, As the special commissioner is not a party to the appeal, the propriety of the allowance can not be reviewed. Reed v. Reed, 23 Ky. Law Rep. 2186, 66 S. W. 819.

Judgment affirmed.