## Robertson et al. v. Hert's Adm'rs et al.

March 3, 1950.

Lawrence F. Speckman, Judge.

406

Samuel R. Wells and Peter, Heyburn & Marshall for Robertson.

James H. Cartwright and Winston, Strawn, Shaw & Black for Kuehn, individually & U. S. Creosoting Co.

Charles I. Dawson, Thomas S. Dawson, Bullitt, Dawson & Tarrant, Loren N. Wood, Wood, Molloy, France & Tully, Laurens L. Henderson, Percy N. Booth, Booth & Booth, Arthur W. Grafton, Wyatt, Grafton & Grafton, James W. Stites, Nelson Helm, William P. MacCracken, Jr. and William T. Baskett for appellees.

CHIEF JUSTICE SIMS—Affirming.

This appeal involves the validity of a contract for the sale of certain securities held by a trust, administered by six trustees, to a corporation controlled by one of the trustees, the purchaser having been authorized by an amendment to the trust instrument to purchase the securities. Four questions are presented: 1. Did the chancellor in the suit to settle the estate have jurisdiction to pass upon the validity of the sale; 2. were the necessary parties before the court; 3. can trustees sell trust assets to a corporation controlled by a fellow trustee; 4. was the purchase price of $3,800,000 fair and adequate?

Mrs. Sallie A. Hert died testate on June 8, 1948, a resident and citizen of Florida. She left an estate worth several million dollars, of which real estate of the approximate value of $750,000 and tangible personal property worth almost $250,000 were located in Kentucky. Her brother, C. R. Aley, and the First National Bank of Palm Beach, Florida, were named and they qualified as executors. Since approximately a million dollars of the assets of the estate were located in Kentucky, Mr. Aley and the Citizens Fidelity Bank & Trust Co., both of Louisville, were appointed ancillary administrators in Kentucky with the will annexed.

Mrs. Hert created two trusts previous to her death, the first was an irrevocable trust dated Aug. 8, 1935, and Alfred L. Kuehn was designated therein as sole trustee. Mrs. Hert retained no interest in the income therefrom or in the corpus but she reserved the right to add thereto.

On June 8, 1944, Mrs. Hert executed the second trust instrument, to which she transferred 98,970 shares of the capital stock of the American Creosoting Company, as well as 25,251 shares of the capital stock of the company's subsidiaries. She owned 85% of the capital stock of the parent company and Alfred A. Kuehn, a business associate of herself and of her late husband, owned the remaining 15% of its stock and was the com-

pany's president. Mrs. Hert, Kuehn and the First National Bank of Chicago were named therein as trustees during her life, and upon her death C. R. Aley and J. Matt Chilton were to become trustees to serve with Kuehn and the bank. By an amendment dated April 2, 1947, she added two additional trustees, W. R. Cobb and Charles I. Dawson. By a second amendment dated June 6, 1947, she withdrew 26,931 shares of the capital stock of the Hurstbourne Company which, together with a note for $450,000, she transferred to the irrevocable trust she created in 1935. These two items thus transferred have an aggregate value of approximately $1,500,000, and she provided that any taxes due the federal government by reason of this addition, over and above the gift tax applicable, should be paid out of the trust created on June 8, 1944. This amendment further provided that the fact she had named Judge Dawson as a trustee shall not prevent the other trustees from employing him as attorney.

On April 2, 1947, Mrs. Hert, in consideration of promises and commitments made between her and Kuehn on April 21, 1932, and the additional consideration of valuable services performed and to be performed by Kuehn, gave him a written option to purchase at her death 98,970 shares of the American Creosoting Company stock at the price at which the stock is finally valued by the federal government for federal estate tax purposes, the option to be exercised within six months from the date of such final valuation. The option contained this paragraph: "This option is intended to be read in connection with said Trust Agreement and any modification thereof, and to the extent of any inconsistency this Option shall be controlling."

Mrs. Hert's will, after making disposition of her personal effects, provided that the residue of her estate should go to the trustees of the trust she created on June 8, 1944, and should be disposed of according to the terms of that instrument. The will states that all estate, inheritance and succession taxes shall be paid out of the corpus of the estate and not charged to the respective beneficiaries. There are two classes of beneficiaries created by the trust instrument of 1944. The first class consists of those who are given a vested interest in income and in the corpus of the trust, if living at the time of distribution. The second class of beneficiar-

ies consists of the descendants of the first class, and the interest of each such beneficiary is contingent upon the death of his ancestor, for whom he is substituted, before the termination of the trust.

On Jan. 29, 1949, the administrators with the will annexed, joined by the trustees, brought this suit to settle the estate under sec. 428 et seq. of the Civil Code of Practice. The executors, the Commissioner of Revenue of Kentucky, the Collector of Internal Revenue in Kentucky and the numerous beneficiaries under the 1944 trust were made defendants in the action. It was averred that certain persons were making claims against the estate, and that the assets of the estate in Florida were not sufficient to pay federal taxes and the assets in Kentucky should be sold for that purpose. A reference to the master commissioner was prayed and it was asked that the action be kept on the docket with authority for plaintiffs to apply to the court for advice as need might arise.

By a contract dated Dec. 16, 1949, the other trustees agreed to sell and Kuehn agreed to buy the 98,970 shares of the American Creosoting Company stock and the 25,251 shares of stock in its subsidiaries for the price of $3,800,000 cash. This met the terms of the option as to the price as well as to the time in which the option was to be exercised by Kuehn.

On Dec. 29, 1949, the same plaintiffs in the settlement suit filed a petition for advice in that action against the same defendants. On the filing of this petition for advice no process was issued or served. However, before the hearing the chancellor required that a copy of the petition for advice be served on each defendant; also, that a copy of same be forwarded by the warning order attorney to each nonresident defendant. The various trusts with their amendments were set out, as well as the various stock mentioned therein, and the inability of the executors to pay the taxes was averred. It was further averred that the assets of the estate were worth not less than $3,500,000 and the federal taxes would be not less than $1,500,000; that while the legal title to the trust assets was in the trustees, all of the trust property was a part of Mrs. Hert's estate for tax purposes, and there was a lien thereon to secure the taxes; that the executors were without sufficient funds to pay the fed-

eral estate taxes and they had requested, and were granted, a year's extension of time within which to pay same, which taxes can only be paid from the assets of the 1944 trust. The petition for advice further averred that under the option Kuehn had offered the trustees $3,800,000 in cash for the American Creosoting Company stock, together with the stock in the subsidiary companies, which was the fair market value of same and was the best price that could be obtained for this stock. It was further pleaded that Kuehn required a judgment of court approving the sale.

Under sec. 822(b), Federal Internal Revenue Code, 26 U. S. C. A., it is the duty of the personal representatives to pay the federal estate taxes, and sec. 825 of that Code, 26 U. S. C. A., prevents the personal representatives from obtaining their final discharge until those taxes are paid. Also, the personal representatives cannot finally settle their accounts under state law until taxes are paid. If sufficient of the trust property is not sold to satisfy the federal estate taxes, the Commissioner of Internal Revenue will make an assessment against the trustees and subject the property of the trust to the claim of the government, which will likely result in an inadequate price. The facts thoroughly tie-in the sale of the trust property as a necessary step in the settlement of the estate. It is not unusual that a petition for advice be filed in a suit to settle an estate.

The trust we are considering is an inter vivos trust and not a testamentary one. While the trust instrument recites it is to be construed and administered according to the laws of the State of Illinois, it plainly must be supervised by a court having control of at least a sufficient number of the beneficiaries to make its decrees effective. In Restatement of the Law, "Conflict of Laws," sec. 297, comment "d", p. 379, it is written: "In order to determine where the administration of a trust is located, consideration is given to the provisions of the instrument, the residence of the trustees, the residence of the beneficiaries, the location of the property, the place where the business of the trust is to be carried on."

We are in thorough accord with the chancellor that he had jurisdiction to pass upon the validity of the sale of this stock to Kuehn.

We now approach the second question of whether all necessary parties were properly before the court. By its terms the trust of June 8, 1944, shall terminate thirty years after its creation, which makes it end June 8, 1974. As was pointed out in the forepart of this opinion, the first class of beneficiaries specifically named are given a vested interest both in the income and the corpus, if living at the time of distribution in 1974. The second class, as heretofore pointed out, consists of descendants of the first class and the interest of the second class is contingent upon the death of their ancestors, for whom they are substituted, before the termination of the trust. All the beneficiaries having a vested interest are before the court.

The questions presented in the petition for advice are common to and affect alike all beneficiaries, regardless of whether their interests are vested or contingent. Therefore, the contingent beneficiaries are neither necessary nor indispensable parties to this action, since they are virtually represented by their ancestors with vested interests, who necessarily must protect the interests of the contingent beneficiaries in protecting their own interests which are identical with the interests of the contingent beneficiaries. As is said in 39 Am. Jur., "Parties," sec. 51, p. 925: "The tenant of the first estate or the party in being having a vested interest virtually represents the subsequent estates, because he has such common interest with other parties in defending that he can be depended upon to bring forward the merits of the controversy as a protection to his own interest in a like manner as would the omitted persons if they were present."

Many authorities could be cited to show the rule of virtual representation has long existed in this jurisdiction, but we will content ourselves by giving one of our earlier cases and two of our late ones. Hermann v. Parsons, 117 Ky. 239, 78 S. W. 125; Langstaff v. Meyer, 305 Ky. 116, 203 S. W. 2d 49; and Carroll v. First National Bank & Trust Co. of Lexington, 1950, 312 Ky. 380, 227 S. W. 2d 410.

We now take up the third question. Inasmuch as Mr. Kuehn controls the United States Creosoting Company which offered $3,800,000 for the stock, it is admitted by Kuehn that he in effect as a trustee is purchasing

trust assets from the other trustees. Therefore, we are confronted with the question whether Kuehn as trustee may purchase part of the trust property. As a general rule, a trustee cannot deal for himself in respect to the trust property. However, in the absence of a statute to the contrary, the creator of a trust may confer upon a trustee the right to deal for himself with respect to trust property. The purchase by the trustee of the trust property, under a grant of authority in the trust instrument, is valid if the price paid is fair and the trustee is not guilty of bad faith.

There is nothing in the laws of Kentucky; or in the laws of Florida, the State of Mrs. Hert's residence; nor in the laws of Illinois, under which the trust instrument recited it is to be construed and administered; prohibiting a trust instrument from granting to a trustee the right to purchase trust property. In 54 Am. Jur. "Trusts" sec. 453, p. 359, it is written on page 361: "In the absence of a statute forbidding the same, the terms of a trust may validly provide and confer authority upon the trustee to buy property owned or held by the trust estate. In the exercise of such authority the trustee in purchasing from himself must employ the highest degree of good faith and care, diligence, and skill."

This text finds support in Finley v. Exchange Trust Co., 183 Okl. 167, 80 P. 2d 296, 117 A. L. R. 162, where the court said on page 171 of 117 A. L. R., that in such instances the trustee's power is a delicate one and he owes to the trust placed in his charge his finest loyalty. He is held to stricter morals than those of the market place, and he must not only be honest but his behavior must be guided by a sensitive honor. The record before us shows that Mr. Kuehn's action and conduct in buying these trust assets meet these high standards.

The trust instrument expressly authorized Kuehn to purchase the stock of the American Creosoting Company, but it did not expressly authorize him to purchase the stock in that company's subsidiaries. However, section 14 of the trust instrument contains this language: "That Mr. Kuehn be not disqualified as trustee hereunder from contracting with the trustees and with said companies to that end (the management of the several companies), nor in any other way restricted in his powers, rights, and duties as a trustee hereunder." The

stock in the subsidiaries is of small value compared to that of the parent company which Kuehn was expressly authorized to purchase, and looking at the broad plan of the settlor, we are convinced that in authorizing Kuehn to purchase the stock held in the parent company she likewise intended that he should have the right to purchase the stock in the subsidiaries, since he was the chief executive officer of them as well as of the parent company. It is a natural consequence for one person or company to buy the stock in the subsidiaries when buying controlling interest in the parent company.

It will require but little space to deal with the question of the fairness and adequacy of the price Mr. Kuehn has offered for this stock. The proof shows the federal authorities have committed themselves to a value of $3,-400,000 for the stock Kuehn agrees to buy, which includes both the stock in the parent company and also that in the subsidiaries. Therefore, when Kuehn agreed to pay $3,800,000 for all of this stock it is evident his price is fair and adequate. We think it is significant that the executors, the administrators with the will annexed and all beneficiaries, with the exception of appellant William R. Robertson, have expressed their satisfaction with the sale and the price Kuehn is to pay for the stock.

Paul Ginsberg, an attorney of Pittsburg, Pennsylvania, has filed a motion in this court asking that he be allowed to intervene as amicus curiae. His motion does not state that he represents any of the parties in interest or that he knows or represents a bidder who will pay more than $3,800,000 for the stock in question. On the contrary, he insists no fair sale of the stock may be had while Kuehn holds an option to purchase same and he asks that the case be referred back to the Jefferson Circuit Court to receive bids for sixty days from persons desiring to purchase the stock. It is apparent that Mr. Ginsburg does not want to file a brief as amicus curiae on the questions before the court but is seeking to inject a new issue on this appeal which was not before the trial court. This we decline to allow him to do. 2 Am. Jur. "Amicus Curiae" sec. 4, p. 697; Northern Securities Co. v. U. S., 191 U. S. 555, 24 S. Ct. 119, 48 L. Ed. 299.

For the reasons given, the judgment is affirmed.