**STOUSE et al. v. FIRST NAT. BANK OF CHICAGO et al.**

Court of Appeals of Kentucky.

Nov. 16, 1951.

Rehearing Denied Feb. 29, 1952.

Percy N. Booth, Alexander G. Booth, Louisville, for appellant.

Bullitt, Dawson & Tarrant, Doolan, Helm, Stites & Wood, Wyatt, Grafton & Grafton, Louisville, William P. MacCracken, Jr., Washington, D. C., Samuel R. Wells, Louisville, Laurens L. Henderson, Phoenix, Ariz., Loren N. Wood, New York City, for appellees.

CULLEN, Commissioner.

In a declaratory judgment proceeding, the Jefferson Circuit Court upheld the validity of a trust instrument executed by Sallie A. Hert, and the validity of the residuary clause of Mrs. Hert's will, in which the residue of her estate was bequeathed to the trustees named in the instrument, for distribution in accordance with the terms of the instrument. Two amendments to the trust instrument were upheld as being valid codicils to the will.

Two of the heirs of Mrs. Hert, who also are beneficiaries of the trust and legatees under the will, have appealed, contending that both the trust and the will are invalid. The remaining heirs, beneficiaries and legatees, the trustees, the executors, and the administrators with the will annexed of the estate in Kentucky, maintain that both instruments are valid.

### The Trust Instrument

The trust instrument was executed, in Kentucky, on June 8, 1944. At that time Mrs. Hert was a resident of Florida, and the instrument so recites. Three trustees were named, one being Mrs. Hert, and the other two being The First National Bank of Chicago and Alfred L. Kuehn, a resident of Chicago. The instrument provided that following Mrs. Hert's death, C. R. Aley and J. Matt Chilton, both residents of Kentucky, should become additional trustees. By an amendment of April 2, 1947, Charles I. Dawson and W. R. Cobb, residents of Louisville, Kentucky, were named as additional *original* trustees.

The corpus of the trust consisted of blocks of stock in several corporations, the principal block being the controlling shares of American Creosoting Company, of which Alfred L. Kuehn (one of the trustees) was president. Following the execution of the trust instrument, the stock certificates were surrendered for cancellation and new certificates were issued to the trustees.

The trust instrument reserved to Mrs. Hert, for her life, the net income from the trust estate. Following her death, the trustees were to pay designated sums to certain employes and a friend of Mrs. Hert, and to hold the balance of the estate in trust for a period not to exceed 30 years from the date of the trust instrument, during which period the income was to be paid to designated beneficiaries in stated proportions. At the expiration of the period, the corpus was to be divided among the income beneficiaries according to their respective shares in the income. A brother, a sister, and several nephews and nieces of Mrs. Hert were beneficiaries of three-fourths of the income, and a number of nephews and nieces of Mrs. Hert's deceased husband were beneficiaries of the other one-fourth. The two appellants here are nieces of Mrs. Hert, being children of her deceased brother, and under the trust instrument each is given a one-sixteenth share of the income and corpus. If the trust and will should be declared invalid, they each would receive a one-sixth share of Mrs. Hert's estate.

In Section 16 of the trust instrument, Mrs. Hert reserved the right during her lifetime to modify, amend or revoke the trust, in whole or in part.

Section 10 of the instrument provided, in part: "So long as the said Sallie A. Hert is a qualified Trustee hereunder and subject to no disability, the Trustees shall exercise the powers conferred upon them only upon the written instructions of the said Sallie A. Hert, and without liability for any action or non-action pursuant to such instructions. * * *"

The trust instrument was not attested according to the requirements for attestation of a will, under the Kentucky, Florida or Illinois law.

It is the contention of the appellants that by reason of the reservation to Mrs. Hert of the income for life, plus the power to revoke or amend, plus the power to control the trustees in the performance of their duties, the trust instrument is testamentary in character and, not having been executed as required of a will, the instrument is void. The appellants rely upon the rule stated in Subsection (2) of Section 57 of the Restatement of the Law of Trusts, as follows:

"(2) Where the settlor transfers property in trust and reserves not only a beneficial life estate and a power to revoke and modify the trust but also such power to control the trustee as to the details of the administration of the trust that the trustee is the agent of the settlor, the disposition so far as it is intended to take effect after his death is testamentary and is invalid unless the requirements of the statutes relating to the validity of wills are complied with."

It is conceded by the appellants that the reservation of a beneficial life estate, plus the power to revoke and modify, is not enough to make the instrument testamentary (see Subsection (1), Section 57, Restatement of the Law of Trusts). There must in addition be the factor of such control over the trustees as to make the trustees nothing more than agents of the settlor.

The appellees maintain that the powers of control reserved by Mrs. Hert are not of such a character as to reduce the other trustees to the status of mere agents. They also argue that the rule as stated in the Restatement does not prevail in Illinois, and that the Illinois law controls because of Section 17 of the trust instrument, which provides: "This trust shall be governed by Illinois law and all questions of interpretation, construction, and administration shall be controlled by the laws of Illinois."

It is obvious that if we find the powers reserved by Mrs. Hert were not such as to come within the rule laid down in the Restatement, we will not reach the question of whether the Illinois law controls.

As we view this case, we have only the narrow question of whether the powers reserved by Mrs. Hert with respect to control of the trustees in the administration of the trust were so great as to make the trustees merely her agents. Before undertaking a discussion of the other authorities on this question, we call attention to the following comments appearing on page 179 of the Restatement of the Law of Trusts:

"* * * The intended trust is not testamentary merely because the settlor reserves power to direct the trustee as to the making of investments or the exercise of other particular powers, or power to appoint a substituted trustee.

* * * * * *

"In determining whether the reserved powers are so great as to make the trustee an agent of the settlor, one of the factors to be considered is the formality of the transaction. Thus, if the transfer to the trustee was by a deed formally executed and recorded, the conclusion that the trustee was also the agent of the settlor would be less likely to be drawn than if the transfer were less formally evidenced."

Appellants cite Bogert on Trusts and Trustees, Vol. 1, Secs. 103 and 104, as authority for the proposition that a trust instrument is testamentary if the settlor reserves "possession, income, and principal to himself for life, and retains all powers of management and control." They cite 68 Corpus Juris, "Wills," page 621, to the effect that retention by the settlor of "full control over the property of the trust during his lifetime" makes the instrument testamentary. Also they cite Scott on Trusts, Vol. 1, Sec. 57.2, as supporting the rule that "power to control the trustee in the administration of the trust" imparts to the instrument a testamentary character.

It may be conceded that the cited authorities lay down the proper rule, but they do not furnish the answer to the question of what constitutes "all powers of management and control," or "full control," or "control in the administration of the trust." They state the rule, but do not supply the standard for determining whether a particular set of facts brings a case within the rule.

Appellants further rely upon Burns v. Turnbull, 294 N.Y. 889, 62 N.E.2d 785; Newman v. Dore, 275 N.Y. 371, 9 N.E.2d 966, 112 A.L.R. 643; In re Shapley, 353 Pa. 499, 46 A.2d 227, 164 A.L.R. 877; Warsco v. Oshkosh Savings & Trust Co., 183 Wis. 156, 196 N.W. 829; Betker v. Nalley, 78 U.S.App.D.C. 312, 140 F.2d 171; and Steinke v. Sztanka, 364 Ill. 334, 4 N.E.2d 472.

None of the above cases is unqualified authority for the proposition advanced. In the two New York cases, the real ground for holding the trusts invalid was that they were "illusory," and were merely sham transactions. In the Pennsylvania case, the trust actually was upheld, and the language with reference to reservation of power to control the trust was dictum. In the Wisconsin case, the donor reserved absolute power to use the trust property as and when he pleased, and the power to give the trustee unlimited directions concerning the handling of the trust estate. In the Federal case, the grantor reserved complete powers of management and disposition, unlimited by the terms of the trust instrument.

In the case before us, we have a trust instrument which gives to the trustees specific, well-defined powers. Those powers include the power to invest and reinvest; to carry on a business; to acquire and lease real estate; to borrow money; to vote stock; to liquidate corporations; and similar powers. The trustees also are given the power to make advancements of principal to any beneficiary, in case of emergency.

It is true that under Section 10 of the trust instrument, the trustees "shall exercise the powers conferred upon them only upon the written instructions of the said Sallie A. Hert," but it is to be noted that this reserves to Mrs. Hert only the power to give instructions concerning the exercise of the specific powers conferred by the trust instrument. There was no reservation of authority in Mrs. Hert to instruct the trustees to do any act beyond the scope of the powers set forth in the instrument. She did not retain the power to deal with the property as she pleased, or to have possession of the property, or to prescribe details of administration not specified in the trust instrument. The other trustees were not merely her agents, because she could direct them only according to the terms of the trust instrument, and not according to her unlimited whims or desires.

The appellants argue that the trustees could not perform *any act* until Mrs. Hert first gave them directions to proceed, with

918

the result that Mrs. Hert was able to exercise absolute and unlimited control over the property until she chose to give some directions. This argument loses sight of the fact that the trustees had both the legal title and the possession of the trust assets, and Mrs. Hert could exercise no control over the assets except by giving directions within the terms of the trust instrument, unless she chose to revoke the trust.

The comments from the Restatement of the Law of Trusts, quoted at an earlier point in this opinion, tend to uphold the validity of the Hert trust. The transfer of the assets to the trustees was accomplished by means of a very formal trust instrument, which fact, it is said, leads one away from the conclusion that the trustees were mere agents. The authority reserved by Mrs. Hert was to direct the trustees as to the exercise of "particular powers," which the comment says is not enough to make the trust testamentary.

We do not find in the law of trusts any underlying policy against which the Hert trust offends. It has generally been held that a settlor may name himself as sole trustee, without making the trust testamentary. DeLeuil's Ex'rs v. DeLeuil, 255 Ky. 406, 74 S.W.2d 474; Scott on Trusts, Vol. 1, p. 136, sec. 17.1; Restatement of the Law of Trusts, sec. 18; Restatement of the Law of Trusts, p. 176, comment "b." Reservation by the settlor of power to approve investments likewise has been held not to impart testamentary character to a trust. DeLeuil's Ex'rs v. DeLeuil, 255 Ky. 406, 74 S.W.2d 474; Cleveland Trust Co. v. White, 134 Ohio State 1, 15 N.E.2d 627, 118 A.L.R. 475; City Bank Farmers' Trust Co. v. Charity Organization Society, 238 App.Div. 720, 265 N.Y.S. 267; Goodrich v. City Nat. Bank & Trust Co., 270 Mich. 222, 258 N.W. 253; Talbot v. Talbot, 32 R.I. 72, 78 A. 535. Even retention of *possession* of the trust assets by the settlor has been upheld. DeLeuil's Ex'rs v. DeLeuil, 255 Ky. 406, 74 S.W.2d 474; Kelly v. Snow, 185 Mass. 288, 70 N.E. 89; Keck v. McKinstry, 206 Iowa 1121, 221 N.W. 851.

Both Scott and Bogert recognize that the *degree* of reserved control is the determining factor in the question of whether an instrument creates a valid trust or only a mere agency. See Scott on Trusts, Sec. 57.2; Bogert on Trusts and Trustees, Secs. 103, 104.

We are of the opinion that the power reserved by Mrs. Hert to control the trustees in their administration of the trust, which power could be exercised only within the limits and in accordance with the terms of the trust instrument, was not of such a degree as to reduce the trustees to the status of agents. We hold that the trust instrument created a valid trust.

The Will

Mrs. Hert's will was executed on the same day as the trust instrument (June 8, 1944), immediately following the execution of the trust instrument. She died, a resident of Florida, on June 8, 1948.

The residuary clause of the will, which is the only part of the will in issue in this case, reads as follows:

"Article Third. All the rest, residue and remainder of the property, real, personal and mixed, of whatsoever character and wheresoever situate, of which I may die seized or possessed, or which I may own or in which I may have any interest at the time of my death, I give, devise and bequeath to the Trustees (and their successors as Trustees) under that certain Indenture of Trust executed this 8th day of June, 1944, by me as Settlor, creating a trust estate of which my friend, Alfred Leonard Kuehn, myself, and The First National Bank of Chicago, a national banking association having its principal place of business in Chicago, Illinois (or its corporate successor), are designated as the original Trustees, the same to be held by them upon and subject to all of the same trusts, terms and conditions as are specified in said trust agreement."

Following the execution of the trust instrument and the will, two documents specifically designated as amendments to the trust instrument were executed by Mrs. Hert. The first amendment, dated April 2, 1947, named two additional trustees, made a minor change concerning settlement of

disagreements among the trustees after Mrs. Hert's death, revoked the gifts to Mrs. Hert's household servants, and changed the gift to her secretary. The second amendment, dated June 7, 1947, withdrew from the trust one block of stock, and authorized the trustees to employ Charles I. Dawson (one of the added trustees) as attorney for the trustees.

Both of the above amendments were executed according to the formalities required for a will, under Florida and Kentucky laws.

On January 10, 1946, Mrs. Hert wrote a letter to Alfred L. Kuehn (one of the trustees), giving him the first right to purchase "my shares of Common Stock in the American Creosoting Company, or any part thereof, should I desire to sell the same." This letter made no reference to the trust instrument. On April 2, 1947, Mrs. Hert wrote another letter to Kuehn, in which she stated that in her former letter she had overlooked the fact that the stock was in trust, and in which she gave to Kuehn the first right to purchase the stocks in the event of a sale of the stock by the trustees during Mrs. Hert's lifetime. This letter recited that it was "intended to be and is an addition to the said Trust Agreement of June 8, 1944 and a modification thereof to the extent that it is inconsistent with the terms of the Trust Agreement." Also on April 2, 1947, Mrs. Hert executed a formal option agreement, giving Kuehn an option to buy the American Creosoting Company stock after Mrs. Hert's death. The option agreement recited that it was "intended to be read in connection with said Trust Agreement and any modification thereof, and to the extent of any inconsistency this Option shall be controlling."

After Mrs. Hert's death, Kuehn exercised the option above mentioned, and a sale of the stock to a corporation formed by Kuehn was approved in an action in which all persons interested in Mrs. Hert's estate were made parties. See Robertson v. Hert's Adm'rs, 312 Ky. 405, 227 S.W.2d 899.

It is the contention of the appellants, concerning the residuary clause of the will, that because Mrs. Hert reserved the power to modify, amend or revoke the trust instrument, by means of writings that need not have been executed in accordance with the requirements for a will, the residuary clause represented an attempt by Mrs. Hert to dispose of the property, not by a testamentary document, but by the *shifting* provisions of the trust instrument, and the residuary clause therefore is invalid. The contention is that the *possibility* of amendments being made to the trust instrument by means of unattested writings is enough to invalidate the will, regardless of whether the amendments actually made were executed according to the requirements for a will. It is argued that the residuary clause attempted *prospectively* to create in Mrs. Hert the power to dispose of her property by an instrument not duly executed as a will.

Appellants rely upon Atwood v. Rhode Island Hospital Trust Company, 1 Cir., 1921, 275 F. 513, 24 A.L.R. 156, certiorari denied 257 U.S. 661, 42 S.Ct. 270, 66 L.Ed. 422; and the cases from several jurisdictions that have followed the Atwood case. See President and Directors of Manhattan Co. v. Janowitz, 260 App.Div. 174, 954, 21 N.Y.S.2d 232; Warsco v. Oshkosh Savings & Trust Co., 183 Wis. 156, 196 N.W. 829; Wagner v. Clauson, 399 Ill. 403, 78 N.E.2d 203, 3 A.L.R.2d 672.

We are faced with the relatively simple question of whether we will follow the Atwood case, or will follow the line of cases in which a different rule is laid down. There are no Florida or Kentucky cases directly in point.

The courts of Ohio have held that an *amendable* trust instrument may validly be incorporated by reference into a will, but that subsequent amendments to the trust instrument cannot be given effect unless they are executed with the formalities required of a will. If the trust instrument is amended by nontestamentary writings, the amendments will be disregarded and the trust instrument will be given effect according to its original terms. Koeninger

v. Toledo Trust Co., 49 Ohio App. 490, 197 N.E. 419; Bolles v. Toledo Trust Co., 144 Ohio St. 195, 58 N.E.2d 381, 157 A.L.R. 1164.

In Old Colony Trust Co. v. Cleveland, 291 Mass. 380, 196 N.E. 920, the Massachusetts Court held that the incorporation of an amendable trust instrument into a will, was valid, and that subsequent amendments to the trust instrument, not having been executed with the formality of a will, would be disregarded.

In a Note in 24 A.L.R., at page 177, it is said: "The courts are agreed that a bequest or devise in trust which is subject to the testator's future directions is void, *unless the directions are in writing and attested in conformity with the Statute of Wills.*" (Our emphasis.)

We are unable to see how the principles behind the requirement of formality in the making of testamentary dispositions of property would be violated by following the rule announced by the Ohio and Massachusetts courts. As far as the original trust instrument is concerned, its incorporation into the will as an existing, well-identified document, meets all the requirements for testamentary disposition. Tuttle v. Berryman, 94 Ky. 553, 23 S.W. 345; Hughes v. Bent, 118 Ky. 609, 81 S.W. 931; Marshall v. Kent, 210 Ky. 654, 276 S.W. 563; Traughber v. King, 235 Ky. 658, 32 S.W.2d 8. If amendments to the trust instrument are executed according to the formalities required of a will, in what respect is the policy of the law of wills violated by upholding the amendments? It is true, as suggested in Scott on Trusts, Vol. 1, p. 299, that in the case of amendments not executed according to the requirements of a will, the giving effect to the original trust instrument, disregarding the amendments, defeats the purpose of the testator. However, this may be considered no more objectionable than refusing to give effect to an unwitnessed codicil to a will. If the testator's intent is to be considered, is it not better to give substantial effect to the intent, by upholding the will and the original trust instrument, than to defeat the intent in toto by holding invalid all of the attempted testamentary disposition?

It is our opinion that the residuary clause of Mrs. Hert's will is valid, and that the original trust instrument, and the two formal amendments of April 2, 1947, and June 7, 1947, are valid parts of the will.

The three documents having to do with the option given Mr. Kuehn, if considered to be amendments to the trust instrument, would not, under the theory we have adopted, be valid parts of the will. However the validity of the option was upheld specifically in Robertson v. Hert's Adm'rs, 312 Ky. 405, 227 S.W.2d 899. All interested persons were parties in the Robertson case, and they are bound by that decision. In any event, it could make no practical difference whether or not the option was considered a part of the will.

Although we have not based our decision on the doctrine of "independent significance," we may mention, in passing, that Scott, in his work on Trusts, makes a forceful argument in support of the proposition that an amendable trust instrument, referred to in a will, and any amendments to the trust instrument, whether made before or after the execution of the will, should be permitted to be resorted to for the purpose of identifying the beneficiaries and determining their interests in the estate, on the theory that the trust instrument and the amendments are facts having a significance apart from the disposition of the property bequeathed. Scott on Trusts, Vol. 1, p. 299.

Conclusion

It is our conclusion that the trust instrument, as amended, created a valid trust; that the residuary clause of the will is valid; and that the trust instrument, as amended, is a valid part of the will.

The judgment is affirmed.